John S. Hocker and Mildred L. Hocker v. Commissioner.
Hocker v. Commissioner
Docket No. 2865-67.
United States Tax Court
T.C. Memo 1969-122; 1969 Tax Ct. Memo LEXIS 175; 28 T.C.M. (CCH) 633; T.C.M. (RIA) 69122; June 17, 1969, Filed *175 Conrad T. Bjornlie, 5455 Wilshire Blvd., Los Angeles, Calif., for the petitioners. Stephen W. Simpson, for the respondent. RAUM
Memorandum Findings of Fact and Opinion The Commissioner determined a $1,451.29 deficiency in petitioners' 1963 income tax. At issue is whether petitioners sustained a deductible casualty loss by reason of a decline in the fair market value of their residence (not physically damaged) resulting from buyer resistance which in turn was due to severe damage inflicted on nearby (but not adjacent) properties by earth slippage. Findings of Fact Petitioners, husband and wife, resided in Los Angeles, California, when the petition herein was filed. They filed their joint 1963 Federal income tax return with the district director of internal revenue at Los Angeles. Early in 1959, petitioners caused to be built a dwelling on a lot at 908 Kenfield Avenue, in the "Brentwood" area of Los Angeles, and have occupied it as their home since May 1959. It is a one-story, modern, frame and stucco four-bedroom house having about 2,800 square feet of living space. The lot is odd-shaped and only 4,800 square feet thereof is suitable for building purposes; the *176 eastern portion thereof consists of an unusable steep slope. Petitioners' total investment in the property was $61,000, of which $55,000 represented the cost of the lot and construction of the dwelling, $4,000 for a pool and $2,000 for landscaping. They have made no capital improvements to the house since May 1959 except for overhead copper plumbing which was installed in 1965. Kenfield Avenue is a cul-de-sac approximately 1,200 feet long originating at Tigertail Road (an established street in the Brentwood area) and winding in a northerly direction on the easterly side of a hillside. It was a new street when petitioners built their home. On January 1, 1963, there were 14 dwellings facing and contiguous to the easterly side of Kenfield Avenue, beginning with petitioners' home, which was closest to Tigertail Road, and ending with a house on the other end of the cul-de-sac. The first six houses on the easterly side, beginning with petitioners' dwelling, were numbered in order as follows: 908, 916, 918, 928, 936, and 944. They were on contiguous lots. During November and December of 1962, severe rain storms occurred in and about the area of petitioners' home. On January 2, 634 *177 1963, a landslide occurred which destroyed the dwellings at 928 and 936 Kenfield Avenue and damaged the house at number 944. A subsequent slide occurred at some time not fixed in the record which further affected the property at number 944, and the house thereon has since been removed. The houses at 928 and 936 Kenfield Avenue were located on filled land. Petitioners' house was on cut land. The slide affected the filled land but not the cut land. The two houses at 916 and 918 Kenfield Avenue between petitioners' house and the houses destroyed by the slide were in existence when the slide occurred and are still in existence. A steel and concrete bulwark has been installed on the easterly side of 928 and 936 Kenfield Avenue to prevent the street from sliding. No visible physical damage to petitioners' lot or house was evident after the slide of January 2, 1963, and access to petitioners' property was not and up to the present has not been impaired. Cracks have since developed in the stucco on the northerly side of petitioners' residence, and the concrete segments of the patio and northerly side sidewalks are parting and raising, but the cause of such cracks, parting, and raising is *178 unknown. Also cracks have continued to appear on the Kenfield Avenue roadway commencing at a point at about the northerly corner of petitioners' residence and continuing in a northerly direction to an extent of seven consecutive lots. However, the record does not disclose whether such cracks occurred in 1963 or whether they were a consequence of the January 2, 1963 slide; they have been periodically repaired and do not affect access to or use of Kenfield Avenue. Immediately prior to the January 2, 1963 slide, petitioners' property had a fair market value of $75,000, as reflected in a contract of sale hereinafter described. Immediately after the January 2, 1963 slide strong buyer resistance developed in respect of all properties on Kenfield Avenue, and as a consequence the fair market value of petitioners' property dropped to $55,000. In the spring of 1963, the Los Angeles County Assessor reappraised the homes in the landslide area and complied a report reflecting the assessed market values of each home on a before and after landslide basis. The following sets forth the assessed valuation for 1962-1963 and the voluntary reduction in the valuation of 908 Kenfield for fiscal year *179 1963-1964 as established by the Los Angeles County Assessor and the assessed valuation for each year thereafter: Fiscal Year
Land
Improvement
Total
1962-1963
$14,400.00
$42,920.00
$ 57,320.00
1963-1964
12,000.00
30,000.00
42,000.00
1964-1965
12,000.00
30,000.00
42,000.00
1965-1966
12,000.00
30,000.00 42,000.00
1966-1967
12,000.00
30,000.00
42,000.00
1967-1968
13,000.00
30,000.00
43,000.00
1968-1969
13,000.00
30,000.00
43,000.00
On or about October 12, 1962, petitioners had given an exclusive listing to Joseph A. Shannon, a licensed real estate broker, to sell petitioners' residence at 908 Kenfield Avenue. On December 19, 1962, petitioners entered into a contract to sell the property for a total cash price of $75,000 to a person named Miriam White, and a cash deposit of $7,500 was made in an escrow established at the Santa Monica Bank, Santa Monica, California, for the purpose of consummating the sale. On or about January 4, 1963, petitioners received a letter dated January 3, 1963 from Miriam White's husband requesting that "we mutually cancel the operation of our purchase of your home at 908 No. Kenfield Ave.," and stating *180 that "[very] definitely we will not release any money to you on January 21, as was discussed." Petitioners complied with the foregoing request, and on March 21, 1963 the escrow was terminated by mutual agreement. Of the $7,500 deposit, $5,500 was returned to Miriam White, $1,365.62 was paid to petitioners, $550 was paid to Joseph A. Shannon, the real estate agent, and the remainder was disbursed for various fees relating to the escrow and purchase agreement. In their 1963 joint income tax return petitioners claimed a $20,000 deduction as a "casualty loss due to substantial earth slide in the close proximity of the * * * property [at 908 Kenfield Avenue]". The Commissioner's determination of deficiency is based solely upon the disallowance of this deduction. 635 Opinion RAUM, Judge: No physical damage to petitioners' property resulting from the landslide has been established and petitioners' access to and use of their property have in no way been affected. In the circumstances, we can find no meaningful distinction between this case and , affirmed (C.A. 9), involving the property at 961 Kenfield Avenue, *181 on the westerly side of the street about two or three lots north of the landslide area. We reach the same result here and sustain the Commissioner. Cf. (C.A. 4), affirming ; ; ; . (S. D.Miss.), relied upon by petitioners, was fully distinguished in . We do not pass upon the further possible impediment to the deduction by reason of petitioners' voluntary determination not to seek specific performance of the contract of sale. Decision will be entered for the respondent.